UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARA L. BICKMEYER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:20-cv-347

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision.

For the following reasons, the Court will **vacate and remand the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on June 29, 2017, alleging that she had been disabled since October 1, 2015, due to diabetes mellitus; high blood pressure; heart conditions; heart attack in 2009; vision problems in both eyes secondary to her diabetic condition; frozen left shoulder;

2

right shoulder pain; anxiety issues; and sleeping issues due to sugar levels and pain. (PageID.93, 226.) She was 52 years old at her alleged onset date. (PageID.93.) Plaintiff graduated from high school and had some specialized job training in a medical assistance and medical transcription program. (PageID.227.) Plaintiff previously worked as a clerk. (PageID.45, 71–73.) Plaintiff's application was denied, (PageID.110), after which she requested a hearing before an Administrative Law Judge (ALJ).

On February 5, 2019, ALJ Nicholas Ohanesian held a hearing and received testimony from Plaintiff and Sandra Smith-Cordingly, an impartial vocational expert. (PageID.55–90.) On March 20, 2019, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.34–48.) The Appeals Council denied Plaintiff's request for review on February 24, 2020. (PageID.20–22.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on April 22, 2020.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from severe impairments of diabetes mellitus; neuropathy; hyperlipidemia; hypertension; diabetic retinopathy; coronary artery disease, status post stenting; glaucoma; cataracts; and vitreous hemorrhage. (PageID.36.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.38–39.)

The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except she:

> can frequently climb ramps and stairs, but never ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She can perform no commercial driving. She can tolerate no more than frequent exposure to hazardous moving machinery or unprotected heights. She can perform no assembly line work.

(PageID.39.)

At step four, the ALJ found that Plaintiff was not disabled during the relevant period as she could perform her past relevant work as a clerk. (PageID.45–46.) Alternatively, the ALJ included a step-five finding that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of information clerk, office helper, and order caller, 250,000 of which existed in the national economy. (PageID.47.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## DISCUSSION

Plaintiff raises the following issues in her appeal: (1) the ALJ failed to properly evaluate the opinions of Plaintiff's treating physicians; (2) the ALJ's RFC finding that Plaintiff could perform light work is not supported by substantial evidence; and (3) the ALJ's credibility finding was not supported by substantial evidence.

**I.     The Opinion Evidence**

Plaintiff submitted medical opinions from three treating physicians, Emile Collins, M.D., Plaintiff's endocrinologist; Frank Garber, M.D., Plaintiff's ophthalmologist; and James M.

5

Pascavis, O.D., Plaintiff's optometrist. In assessing the medical opinions, the ALJ found the opinion of State agency physician Natalie Gray, M.D., who initially reviewed Plaintiff's claim as of November 1, 2017, highly persuasive. (PageID.43.) Dr. Gray concluded that Plaintiff could perform a reduced range of light work. (PageID.43, 104–06.) She precluded Plaintiff from performing assembly line work due to moderate constriction of the visual field in her right eye. (PageID.106.) The ALJ found Dr. Gray's opinion persuasive because she "reviewed the entirety of the record available to her" and, "possess[ed] substantial program expertise," and her opinion was largely consistent with the medical record. (PageID.43.) The ALJ found the opinions of Drs. Collins, Garber, and Pascavis partially persuasive. (PageID.43–44.) Plaintiff contends that the ALJ erred in his assessment of these opinions by opting to adopt the opinion of Dr. Gray—a family physician or general practice physician—over the fairly consistent opinions off three long-term treating physicians, two of whom are specialists.[2] (ECF No. 9 at PageID.849–51.)

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 404.1520c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 404.1520c(b)(1). Those factors include: (1) supportability; (2)

---

[2] In her reply, Plaintiff argues that the ALJ did not comply with *Miller v. Commissioner of Social Security*, 811 F.3d 825 (6th Cir. 2016), by considering evidence of record after the State agency physician issued her opinion. (ECF No. 11 at PageID.877.) Because Plaintiff first raised this argument in her reply, the Court will not address it. *See, e.g.*, *ABC Bev. Corp. & Subsidiaries v. United States*, 577 F. Supp. 2d 935, 950 n.16 (W.D. Mich. 2008); *see also Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682–83 (E.D. Mich. 2002) (stating that "it is not the office of a reply brief to raise issues for the first time" (citation omitted)).

consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 404.1520c(1)–(5). The ALJ must explain his or her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id*. §§ 404.l520c(b)(2), (3) 416.920c(b)(2), (3). The regulation defines "supportability" and "consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(1)–(2).

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527).

### A. Dr. Collins

Dr. Collins provided a Diabetes Mellitus Medical Source Statement on January 11, 2019. She diagnosed Plaintiff with diabetes mellitus, neuropathy, and coronary artery disease. She said that Plaintiff had a number of symptoms, including fatigue, episodic vision blurriness, bladder infections, rapid heartbeat/chest pain, retinopathy, extreme pain and numbness, frequency of urination, and dizziness/loss of balance. (PageID.761.) Dr. Collins said that Plaintiff had painful neuropathy symptoms at rest and could sit for at least six hours and stand/walk for about two hours in an eight-hour workday. Plaintiff would not need a cane or other assistive device to ambulate.

7

(PageID.762–63.) Plaintiff could only rarely lift less than ten pounds, could occasionally twist and climb stairs, rarely stoop, and never crouch, squat, or climb ladders. (PageID.763.) Dr. Collins also said that Plaintiff would need to take unscheduled 15-minute breaks twice each day, would be off task 15 percent of the workday, and would miss more than four days of work per month.[3] (PageID.762–64.)

The ALJ found the opinion only partially persuasive because "trends in constitutional examinations [were] not significant for frequent dizziness or drowsiness," "gait assessments of record were routinely unremarkable," and "trends in neurologic examinations revealed only modest effects of peripheral neuropathy unsupportive of the reduced standing/walking/lifting carrying opined by Dr. Collins." (PageID.44.)  The ALJ further rejected Dr. Collins's opinion that Plaintiff would be off task 15% of the workday because the limitation was "not supported by evidence of record, which reveals no severe mental impairment, and little evidence of distracting levels of pain." (PageID.44.)

The ALJ's assessment of Dr. Collins's opinion was supported by substantial evidence. For example, while there were positive indications of mild peripheral neuropathy in Plaintiff's feet in 2016 (PageID.486, 517), subsequent examinations of Plaintiff's feet showed no deformity, sensation decrease, interdigital erythema, or nail changes or disorders; deep tendon reflexes and range of motion were normal; and monofilament wire testing was normal. (PageID.499, 631, 717.) As of January 2018, examinations of Plaintiff's feet continued to be unremarkable for neurological issues or skin problems. (PageID.717.) The medical record also consistently showed that Plaintiff demonstrated normal gait, stance, and ambulation, all of which suggest no more than mild

---

[3] The ALJ said that Dr. Collins opined that Plaintiff would be off task for 25 percent or more of each workday, but a close examination of the form indicates that Dr. Collins initially marked 25 percent but crossed out that answer and instead answered 15 percent. (PageID.764.)

neuropathy. (PageID.498–99, 531, 722.) Finally, Plaintiff often denied neurologic symptoms such as numbness, dizziness, fatigue, and headache. (PageID.327, 671, 730, 734–35.) The ALJ thus properly determined that Dr. Collins's opinion was not fully consistent with or supported by the medical evidence in the record. Plaintiff offers no specific argument to the contrary supporting her contention that the ALJ failed to properly evaluate Dr. Collins's opinion.

### B.   Dr. Garber

Dr. Garber provided a Vision Impairment Medical Source Statement dated January 5, 2019. He opined that Plaintiff had decreased peripheral vision resulting from laser treatments in both eyes and changes in her vision in both eyes due to changes in blood sugars. (PageID.813.) He opined that Plaintiff could only occasionally perform work involving near/far acuity, depth perception, accommodation, and color vision and could never use her field of vision; she could avoid ordinary workplace hazards; and she could work with small but not large objects. Dr. Garber said that Plaintiff could frequently lift up to ten pounds and could rarely stoop or crouch. (PageID.814.) He opined that Plaintiff would need to take five-to-six unscheduled breaks each workday lasting fifteen minutes each and would be off task more than 25 percent of each workday. (*Id.* at PageID.815.)

The ALJ explained that he found Dr. Garber's opinion only partially persuasive because his contentions regarding Plaintiff's need for unscheduled breaks and time-off-task were not supported by the record, which "reveal[ed] no severe mental impairment and little evidence of distracting levels of pain." The ALJ also found Dr. Garber's assertion that Plaintiff could only occasionally use most of her visual skills and never use her field of vision inconsistent with Plaintiff's reported activities of daily living, which included driving, reading, and watching television. Finally, the ALJ noted that a number of Plaintiff's vision examinations during the relevant period showed that her vision was correctable to functional levels and exacerbations of

Plaintiff's vision in her right eye resulting from vitreous hemorrhage "bleeds" were only intermittent. (PageID.44.)

The Court finds that the ALJ's assessment of Dr. Garber's opinion is unsupported in certain respects. While much of the assessment is well founded, it mischaracterizes the basis of Dr. Garber's opinion regarding unscheduled breaks and time-off-task, which had nothing to do with Plaintiff's mental impairments or pain. Rather, Dr. Garber said that Plaintiff would need breaks "to let blood sugar return to normal," which, he indicated, related to vision changes in both eyes. (PageID.813, 815.) In fact, the ALJ noted that Dr. Garber's assertion that Plaintiff "experiences vision deficit secondary to poor blood sugar is consistent with the vision testing of record." (PageID.44.) At the hearing, Plaintiff testified that she experiences changes in her sugars, which cause her vision to blur throughout the day. She said that, although the changes occur daily, they are unpredictable and usually continue until she corrects the condition by consuming juice or food (low blood sugars) or injecting insulin (high blood sugars). (PageID.75–78.) She said that it may take 15 to 20 minutes or longer to recover from an occurrence. (PageID.78.) Plaintiff also testified about incidents involving hemorrhages or "bleeds" in her right eye, which are also unpredictable. She described these instances as "pin drops" that spread out in the eye as "gobs of black," which prevent her from watching television or reading. (PageID.75–76.) Plaintiff said that these conditions prevented her from reading and watching television only some of the time. Whether Plaintiff's vision was correctable to functional levels thus has little relevance to her alleged daily vision disturbances caused by fluctuations in her blood sugars. Similarly, given that these circumstances are consistently present, Plaintiff's daily activities of driving, reading, and watching television are not necessarily inconsistent with this aspect of Dr. Garber's opinion. Accordingly,

10

the Court concludes that remand is necessary to afford the ALJ an opportunity to reevaluate Dr. Garber's opinion relating to Plaintiff's need for unscheduled breaks and time- off-task.

One additional point bears mention. The ALJ did not address Dr. Garber's exertional limitations or explain why he rejected them, but statements in his discussion of Dr. Pascavis's opinion indicate that he *may have* dismissed them as unrelated to Plaintiff's vision impairment and beyond the scope of Dr. Garber's expertise. Dr. Garber's treatment notes, however, suggest that his exertional limitations address Plaintiff vitreous hemorrhages, which Plaintiff indicated "often occur after straining or lifting." (PageID.728; *see also* PageID.77 (Plaintiff testifying that movements or lifting something heavier may trigger a bleed); PageID.608 (indicating that the most recent bleed occurred after Plaintiff lifted her granddaughter).) Therefore, the ALJ should also consider Dr. Garber's more restrictive exertional limitations and their potential impact on Plaintiff's RFC on remand.

### C.  Dr. Pascavis

Dr. Pascavis completed a Vision Impairment Medical Source Statement dated January 15, 2019. He said that Plaintiff could frequently rely on near/far acuity, color vision, and field of vision and could never rely on depth perception or accommodation. He said that Plaintiff could not always avoid workplace hazards and could work with small and large objects depending on her diabetic status on a given day. Dr. Pascavis also indicated that Plaintiff could frequently lift less than ten pounds, rarely stoop, and never crouch, but he indicated that these restrictions were related to Plaintiff's neuropathy rather than her vision. (PageID.830.) He said that Plaintiff would need to take unscheduled breaks during a normal workday depending on her diabetic status on the particular day, although he did not specify the frequency or length of such breaks. He also indicated that Plaintiff would be off task more than 25 percent of the workday. (PageID.830.)

The ALJ found Dr. Pascavis's opinion partially persuasive for many of the same reasons he assigned to Dr. Garber's opinion, but added that Dr. Pascavis's exertional and postural limitations (ascribed to Plaintiff's neuropathy) were "somewhat unfounded." (PageID.44–45.) The Court finds that the ALJ's assessment of the opinion is, in large part, well supported, but determines that remand is appropriate to allow the ALJ to consider Dr. Pascavis's opinion, along with Dr. Garber's opinion, on the issue of Plaintiff's need for additional breaks during the workday to deal with vision changes resulting from fluctuations in her sugars.

## II. RFC Finding

Plaintiff contends that the RFC finding is not supported by substantial evidence. RFC is an administrative finding of fact reserved to the Commissioner. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996)."). A claimant's RFC is the most that the claimant can do after considering the effects of all impairments on the ability to perform work-related tasks. 20 C.F.R. §§ 404.1545(a). "[T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ's function is to resolve conflicts in the evidence. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

Plaintiff's argument regarding the RFC is not well developed. To the extent Plaintiff contends that the ALJ erred in failing to include limitations relating to her right shoulder capsulitis, the Court disagrees. The ALJ noted that x-ray imaging showed only minimal degenerative change of the right acromioclavicular joint without glenohumeral degenerative changes or high-riding humeral head. (PageID.37, 369.) In addition, Plaintiff was treated conservatively with injections and physical therapy. (PageID.369, 682–96, 703.) The treating orthopedist noted that after a couple

of months of physical therapy, Plaintiff had made "good progress with her right shoulder range of motion," achieving forward elevation to about 120 degrees and abduction in the 80-85-degree range. (PageID.704.) Plaintiff was discharged from physical therapy to continue home exercises on her own. (PageID.37, 696.) The ALJ's determination that Plaintiff's shoulder impairment did not merit limitations was supported by substantial evidence.

Plaintiff also contends that the ALJ should have included limitations regarding her vision impairments. As set forth above, on remand, the ALJ should consider whether additional limitations are warranted for unscheduled breaks and for being off task more than 25 percent of the workday. In addition, the ALJ should consider the effect of Plaintiff's recurrent vitreous hemorrhages, which became more of an issue in 2017. Although the Commissioner asserts that these symptoms stabilized with treatment (ECF No. 10 at PageID.869 (citing PageID.754)), the very next treatment record shows that the condition was ongoing, as Plaintiff reported that "her right eye hemorrhaged again," and she was "now seeing gobs of black ink" in her right eye. (PageID.755.) Moreover, while these episodes were intermittent, Plaintiff's treatment records show that they were not brief, as symptoms sometimes continued for weeks or perhaps months.[4] (PageID.728, 733, 738.)

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. An order consistent with this opinion will enter.

---

[4] Because the Court is remanding this matter, it finds no need to address Plaintiff's argument that the ALJ's evaluation of her subjective symptoms was not supported by substantial evidence. The Court reiterates its earlier observation, however, that that Plaintiff's reported daily activities are not necessarily inconsistent with her claimed need for unscheduled breaks and vitreous hemorrhage symptoms.

Dated: September 20, 2021  /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge